GEORGE REED, and others, who sue for themselves and
other stockholders of the Manitowoc & Mississippi
Railroad Company, Appellants,

*vs.*

BENJAMIN JONES, JARVIS E. PLATT, and others, and
the Manitowoc & Mississippi Railroad Company,
Respondents.

APPEAL FROM THE MANITOWOC CIRCUIT COURT.

An injunction to restrain a holder of stock in an incorporated company from voting
upon such stock at an election of directors for said company, is not an injunction
to "suspend the ordinary business of a corporation" within the meaning of sec-
tion 132 of the Code.

*Semble,* that a preliminary injunction should not be granted, except upon a showing,
by the complainant, that a clear vested right of the complainant is threatened
with permanent and irreparable injury.

The plaintiffs, suing in behalf of themselves and the other
stockholders of the Manitowoc & Mississippi Railroad Com-
pany, represent that they are stockholders and directors of said
company, (the entire board of directors consisting of nine mem-
bers), and that about the 16th day of December, 1854, the
defendant Jones entered into a certain contract with said Rail-
road Company, as follows, to-wit :

" Memorandum of an agreement made the sixteenth (16) day
of December, A. D. 1854, by and between Benjamin Jones of
the city of Chicago and state of Illinois, of the one part, and
the Manitowoc & Mississippi Railroad Company of the other
part, witnesseth, That, whereas said M. & M. R. R. Co. did on
the      day of      A. D. 1854, apply by petition to the
judge of the circuit court for the county of Manitowoc and

state of Wisconsin, for the appointment of three commissioners to assess the value of certain lands in the village of Manitowoc, and the damages arising to the owners thereof by reason of the taking of the same for the use and construction of their road, and such proceedings were thereafter had, that two of said commissioners, to-wit: Michael Fellows and Hiram McAllister, filed in said court their report in writing by which said report said commissioners did estimate the value of said lands mentioned in said report, and the damages to the owners thereof, by reason of the taking of the same by said company as aforesaid, at the total sum of twenty thousand five hundred and forty dollars (20,540), to-wit: the lands on the north side of the Manitowoc river, and including blocks 170, 171, 172, 173, 185, 186, as mentioned in said petition and report, at the sum of five thousand five hundred and twenty-five dollars ($5,525,) and the lands on the south side of said river and including blocks 187, 212, 213, 214, 215, 216, 241, 242, 243, as mentioned in said petition and report at the sum of fifteen thousand and fifteen dollars ($15,015.)

" And whereas, by stipulation of this date, between the several owners and claimants of said lands, and said M. & M. R. R. Co., judgment is to be entered up in said court, against said company, for the amounts of said reports, all informality and irregularity in the same being hereby waived ; and whereas, said blocks of land so described in said petition and report, by several joint owners, to-wit: of lot No. two (2) in section No. thirty (30) in said village of Manitowoc, containing on the north side of said river, twenty-two acres of land, and on the south side of said river, forty-six (46) acres of land.

" And whereas, said Jones claims to own of said land on the south side of said river fourteen and one-half (14½) acres, in manner following, to-wit ; in fee, eight (8) acres, and by virtue of tax deeds on the same, six and one-half (6½) acres ; of lands on the south side of said river said Jones claims to own thirty-one and one-half (31½) acres, as follows, to-wit: in fee, 17,666-1000 acres, and tax deeds on the same, 13,834-1000 acres.

" And whereas, the share or proportion of said Jones in said judgments, upon the basis that he has good title to the whole of said 14½ acres on the north side, and the whole of said 31½ acres on the south side of said Manitowoc river, would be as follows: proportion of the          taken by said company, to-wit: for the 14½ acres $3,641.52, and for the proportion of the 31½ acres taken by said company, $10,282; in the whole, $13,923.52.

" And whereas, the said Jones has agreed, and does hereby agree and bind himself to receive in full payment for the proportion of said 14½ acres and 31½ acres as aforesaid, taken by said company as per said petition and report, and in full satisfaction of his share or proportion of·said judgment to be entered up as aforesaid upon the basis as aforesaid, that he has good title to 14½ acres on the north side of the river and 31½ acres on the south side of the river, in said lot number two, section thirty (30), the following sums being his proportion upon the basis of an appraisal made by James Bennett, one of the commissioners appointed by said judge, which said appraisal is now on file in said court, to-wit: whole amount of appraisal by Bennett, $34,425; of lands on north side of the river as aforesaid, set out in said petition and report, $9,570; of lands on south side of the river as aforesaid, set out in said· petition and report, $24,855; as per which appraisal the said Jones, for his proportion of the lands taken by said railroad company of the 14½ acres on the north side of the river, hereby agrees to receive the sum of six thousand three hundred seven 50-100 dollars, payable in the manner hereinbefore specified; and for his proportion of the lands taken by the said railroad company of the thirty-one, one-half acres on the south of the river, the sum of sixteen thousand seven hundred forty-nine 78-100 dollars ; for which said sums, amounting in all to the sum of twenty-three thousand fifty-seven 28-100 dollars, the said Benjamin Jones hereby acknowledges full satisfaction and payment in certificates of stock of said railroad company to that amount, this day issued by said company to him:

" Now, therefore, if at any time hereafter it shall be made to

appear that said Jones has no title to any part of the said parcels of land above mentioned, and for which he has hereby acknowledged payment and full satisfaction from said company; or whenever it shall be made to appear that any person or persons has or have a better title to said lands, or any part thereof, than said Jones, then and in that case said Jones hereby agrees and binds himself in consideration of the premises, and of one dollar to him in hand paid by said R. R. Co., the receipt whereof is hereby acknowledged, to surrender to said company such proportion of said certificates of stock so issued to him as aforesaid, as the number of acres of said land to which it may or shall hereafter appear he has no good title, shall bear to the whole number of acres for which certificates of stock were so issued to him as aforesaid; Provided, and this agreement is upon condition that said Manitowoc & Mississippi Railroad be completed from Manitowoc to Menasha within five years from this date, and if not completed as aforesaid, then this agreement and everything relating thereto to be void, otherwise of force."

And these plaintiffs further show, that after the entering into, and in pursuance of said contract, the said Manitowoc & Mississippi Railroad Company issued and delivered to the said defendant Benjamin Jones certificates of stock of said company for his interest in said lands described in said contract, to the amount of twenty-three thousand and fifty-seven and 28-100 dollars—that is to say, to the amount of six thousand three hundred and seven and 50-100 dollars for his said alleged interest in said lands on the north side of said Manitowoc river, and to the amount of sixteen thousand seven hundred and forty-nine and 78-100 for his alleged interest in said lands on the south side of said Manitowoc river, as provided for and specified in said contract.

And the plaintiffs further show that they are informed and believe that, from searches made for that purpose in the register's office of said Manitowoc county, it now appears that the said defendant Benjamin Jones, instead of owning in said tract on the north side of the Manitowoc river fourteen and one-half acres, as alleged in said contract, he only owns nine and 63-100

acres in said tract on the north side of said Manitowoc river; and instead of owning in said tract on the south side of the Manitowoc river thirty-one and one-half acres, as alleged in said contract, he only owns twenty-one 25-100 acres in said tract on the south side of the Manitowoc river; that in accordance with said contract, he is entitled only to certificates of stock in said company to the amount of fifteen thousand two hundred and sixty-seven 80-100 dollars for the conveyance of his interest in said two tracts of land to said railroad company, and holds an excess of certificates of stock of said company of seven thousand seven hundred and ninety-three 39-100 dollars.

And the plaintiffs further show, that the said judgment mentioned in the said contract to be entered up against the said Manitowoc and Mississippi Railroad Company, on the stipulation referred to in said contract, has never been actually entered up against said company.

And the plaintiffs further show, that on or about the thirtieth day of June, 1857, this plaintiff, George Reed, the president of the said railroad company, acting on behalf of, and by authority of, the board of directors of said company, sent the following communication to said defendant, Benjamin Jones:

"Office Pres't M. & M. R. R. Co., }
Manitowoc, June 15, 1857. }

"To BENJAMIN JONES, Esq.: Sir:—You will please execute, acknowledge and deliver to the Manitowoc and Mississippi Railroad Company the deeds herewith presented, or other suitable deeds conveying to said company 9-100 acres of land on the north side of the river in Manitowoc, taken by said company for depot purposes; those being the several amounts of your interest in said lands as described in said deeds, and for which you heretofore, to wit: on the 16th day of December, 1854, by contract acknowledged full payment and satisfaction in the capital stock of said company.

"You received from the company under said contract twenty-three thousand and fifty-seven 28-100 dollars, while you are entitled to retain for the lands described in said deeds, and which you have contracted the company shall take, only the sum of fifteen thousand two hundred and

sixty-seven 39-100 dollars in the stock of said company. You have received and now hold an excess of stock to the amount of seven thousand seven hundred and ninety-three 39-100 dollars, which amount you will please surrender to the company, as agreed per your said contract of date the 16th day of December, 1854.

" The company will execute to you a suitable bond, conditioned that the railroad to Menasha shall be completed by the 16th day of December, 1859.

" The company will pay all taxes assessed upon the lands described in said deeds and referred to in said contract, and will repay to you such amount of taxes as you may have paid upon said lands since the date of your said contract.

" In making the surrender of the excess referred to, to the company, the treasurer will adjust the matter of taxes and the fractional amounts of stock.

" On behalf, and by authority of the board of directors,

I subscribe myself,

Respectfully, your obd't serv't,

(Signed) GEO. REED, President."

Yet that the said defendant, Benjamin Jones, absolutely refused to execute and deliver the said deed mentioned in said communication and presented to him for execution, or any other suitable deed of conveyance of said lands, and that he absolutely refused to surrender to said company the said excess of stock so held by him, or any part thereof.

And these plaintiffs further show that the next annual election of the board of directors of the Manitowoc and Mississippi railroad company is to be held on the first Monday of July, eighteen hundred and fifty-seven ; that said defendants Benjamin Jones, Jarvis E. Platt, Edgar D. Beardsley, Charles Cain, Charles Jones and Joseph Turner, constituting two-thirds, and having the control of the board of directors of said company, fraudulently conspiring and confederating to get the entire and absolute control of the affairs of said company, at the next election of the board of directors, have, by a resolution of the board of directors, on the seventeenth day of June, 1857, against the vote and protest of these plaintiffs, fraudu-

lently caused capital stock of said company to be issued to the amount of one hundred and sixty thousand dollars, for the purpose of using the vote on said stock of one hundred and sixty thousand dollars for fraudulent designs at said election, and by another resolution, on the same day, have caused the subscription book of said company to be closed until after said election, so as to prevent any *bona fide* subscriptions of the stock of said company to be made, which might change the result of said election, against their calculations and designs.

And these plaintiffs are informed and believe, that one of the reasons why the said Benjamin Jones has conspired and confederated with the other five directors of said company, who are defendants in this action, to get the absolute control of the affairs of said company by the next election of the directors of said company is, that said Benjamin Jones has the design to get the said contract hereinbefore set forth, made between him and the said company, in relation to the conveyance of his interest in said lands, on the north and south sides of said Manitowoc river cancelled, and the lands returned to him, as they are now much more valuable than at the time of making said contract between him and said railroad company; and these plaintiffs expressly say, that they are informed and believe, that the said Benjamin Jones has repeatedly, avowed that he designed to have said contract cancelled, and the lands returned to him.

And these defendants further say that they are informed and believe, that the said Benjamin Jones intends to vote at the said next election of the directors of said company, on the said excess of stock so wrongfully held by him, and amounting to seven thousand seven hundred and ninety-three 39-100 dollars, and thereby to defraud these plaintiffs and other stockholders of said company of their just rights at said election.

And these plaintiffs further say that they fear, and have good reason to fear that, unless restrained by the order of this court, the said defendant, Benjamin Jones, will offer to vote at said election on the excess of said stock so wrongfully held by him

and amounting to seven thousand seven hundred and ninety-three 39-100 dollars; and that the officers and agents of the said Manitowoc and Mississippi railroad company, unless restrained by the order of this court, being under the control of the said defendants Benjamin Jones, Jarvis E. Platt, Edgar D. Beardsley, Charles Cain, Charles Doty and Joseph Turner, as directors of said company at said election, will wrongfully receive the said vote of the said Benjamin Jones, or another person voting for him, on the said excess of said stock so wrongfully held by said Benjamin Jones; and all this for the purpose of defrauding these plaintiffs and other stockholders of said company of their just rights at said election.

And these plaintiffs further show that all the other stockholders of said company, being about sixty in number, are too numerous to make it practicable to bring them all before the court and make them plaintiffs in this action.

These plaintiffs therefore pray this court for judgment against the said defendant Benjamin Jones, to restrain said Benjamin Jones, his agents and attorneys, from voting or offering to vote at said election of the directors of said Manitowoc and Mississippi Railroad Company, on the excess of stock so wrongfully held by him, and amounting to seven thousand seven hundred and ninety-three 39-100 dollars, and to restrain the said Manitowoc and Mississippi Railroad Company, its officers and agents, and each and every of them, from receiving, at the next election of said directors, the votes of said Benjamin Jones, his agent and proxy, or attorney, on the said excess of stock so wrongfully held by him, and amounting to seven thousand seven hundred and ninety-three 39-100 dollars.

On this complaint, the following order of injunction was obtained in this action :

It appearing satisfactory to me by the affidavit of George Reed, one of the above named plaintiffs, verifying the complaint in this action, that sufficient ground for an order of injunction exists ; I do hereby order that the said defendant Benjamin Jones, his agents and attorneys and each of them, refrain from voting or offering to vote, at the next annual elec-

tion of the board of directors of the Manitowoc and Mississippi Railroad Company, to be held by the stockholders of said company, on a certain excess of stock of said company, wrongfully held by said Benjamin Jones, and issued to him by said company under his contract with said company, for the conveyance of his interest in two certain tracts of land on the north and south sides of the Manitowoc river, which said contract bears date the sixteenth day of December, 1854, and which said excess of stock, so wrongfully held by said Jones, amounts to seven thousand seven hundred and ninety-three and 39-100 dollars, and that the said Manitowoc and Mississippi Railroad Company, its officers and agents, and each and every of them, refrain from receiving, at said next annual election of the directors of said company, the vote of the said Benjamin Jones, his agents, proxy, or attorneys, on the said excess of stock of the said company, or any part thereof, so wrongfully held by said Jones, and amounting to seven thousand seven hundred and ninety-three and 39-100 dollars, as aforesaid.

And in case of disobedience to this order, you, the said Benjamin Jones, your agents and attorneys, disobeying this order, and you the said Manitowoc and Mississippi Railroad Company, its officers and agents, each and every of them, disobeying this order, will be liable to the punishment therefor prescribed by law.

Dated at Manitowoc, the 4th day of July, A. D. 1857.

[Signed] CHARLES H. WALKER,

Court Commissioner, Manitowoc Co., Wis.

At a special term of the circuit court of Manitowoc county, held in July, 1857, a motion was made by defendants' counsel to dissolve the foregoing injunction, on the ground that the same ought to have been granted by the court or by the circuit judge of that court, and not by a court commissioner, according to section 132 of the Code of Procedure, which motion was sustained by the court *on that ground*, and an order made dissolving the injunction; from which last mentioned order the plaintiffs have appealed to this court.

Reed et al. vs. Jones et al.

*E. G. Ryan* and *Smith and Salomon,* for appellants.

*D. J. Pulling,* for respondents.

A preliminary injunction is in the discretion of the court, and is never granted, except the party applying has a clear vested right which may be irreparably affected, &c.    6 J. R., 46 ; 1 Paige, 97.    An injunction will not be granted to trans-fer possession from one party to another.    Hop., 135.

The reception of spurious votes will not vitiate an election ; it must appear that the successful ticket received illegal votes the rejection of which would have prevented the election.    7 Cowen, 153.

Nor then if the same ticket would have been elected if the illegal votes had been rejected.    19 Wend., 635 ; 19. Id., 37 ; 1 Green, 352.

On a bill by stockholders of a bank charging the directors with fraud in the management of an election of directors, whereby they were elected, an *injunction* will not be granted *in liminie.*    6 Johns, chap. 160.

The injunction could not be granted by a supreme court commissioner.    Code, § 132.

*By the Court,* Cole, J.    The only question discussed in the brief of the counsel for the appellants, is the power of the court commissioner to grant the injunction in this case.    The injunction was granted to restrain the respondent, Jones, from voting or offering to vote at the annual election of the board of directors of the Manitowoc and Mississippi railroad com-pany for 1857, upon, (as it is alleged in the complaint) certain excess of the stock of the company wrongfully held by Jones ; the stock having been issued to him by the company in pursu-ance of a contract between him and the company for the con-veyance of certain lands on the north and south side of the Manitowoc river.    It was alleged in the complaint, that an examination of the records in the register's office of Manito-

woc county showed that a title to a part of the lands which Jones had sold the company was defective, and which lands were the consideration for the stock issued to him by the company, and that therefore he had no right to vote at the election upon a proportionable share of the stock. And in one of the points made by the counsel for the respondents, it is contended that the court commissioner had no authority to grant this injunction, for the reason, as is insisted, that the injunction suspended the general and ordinary business of the corporation, and by section 132 of the code, could only be granted by the circuit court or the judge thereof. At the same time it is not denied by the counsel for the respondents that court commissioners can grant injunctions in certain cases, but had the court commissioner authority to grant one in this case? In other words did the injunction suspend the general and ordinary business of the company within the meaning of section 132 of the Code? We think not. We must give to the language of the Code in this place, its popular and usual meaning. What then do we understand to be the general and ordinary business of a railroad company.? Is it the election of boards of directors, as required from time to time by its charter and by-laws? Is this the common, ordinary business of a railroad corporation? Is it the principal part of its business? Is it any considerable part of its business, or is it not rather entirely subordinate and incidental to the main object and business of the corporation? These questions suggest their own answer. We understand that the company is not created chiefly and principally to elect its board of directors, however necessary a board of directors may be, to oversee, and carry on and accomplish the main primary object and purpose of the company. The "general and ordinary business" of a railroad company is universally understood to be that of building and keeping in repair its road, furnishing the rolling stock for the road, and operating it for the transportation of property and passengers. It has to do many things as incidental and necessary to effectuate and attain its main purpose. But it is quite obvious that the company might go on in the prosecution and transaction of its

Reed et al. vs. Jones et al.

general and ordinary business of building, furnishing and operating the road, even if the election of a board of directors upon a certain day should be suspended or postponed. Section 3 of the charter expressly provides (Session Laws, 1851, page 373) that if from any cause an election of directors shall not be held at the regular time specified therefor, the same may be held at any other time on a notice, &c., and that until such election, the directors of the preceding year shall continue to act, and the charter should not be avoided by reason of the irregularity or want of such election, so that we conclude that the injunction in this case did not "suspend the general and ordinary business of the corporation," within the intent and meaning of section 132 ofthe Code. But nevertheless we are of the opinion that the injunction was properly dissolved, on other grounds than a want of authority on the part of the court commissioner to grant it. The case presented by the complaint is not such a one as to entitle the party to a preliminary injunction. The injunction was asked for to restrain and prevent the respondent Jones, from voting at the annual election of the board of directors upon an alleged excess of stock held by him as one of the stockholders of the company. But it does not appear from the complaint that the company has taken any steps whatever to declare this excess of stock void and cancel it. It would be premature at this stage of the cause, before the coming in of the answer and proof, to enter upon a full examination of the rights and liabilities of the parties to the memorandum of an agreement, dated December 16th, 1854, set out in the complaint. But it is quite apparent from this agreement, that Jones was not bound to surrender any portion of his certificate of stock until it was made to appear in some way that some other person had a better title to the lands which he had sold to the company, or some of them, than he had. The complaint alleges that the plaintiffs are informed and believed " from searches made for that purpose in the register's office of said Manitowoc county," that Jones did not own all the land which he had sold to the company. But still he might have a good, perfect and indefeasible title

to all the property, although the records in the register's office did not show it. But Jones might not offer to vote upon this alleged excess of stock, or if he should vote upon it, the illegal votes might not change the result, or be productive of any great injury to the interests of the plaintiffs or the company. Now upon general principles it would seem improper and most mischievous to grant an injunction upon the complaint of a minority of a board of directors to restrain a stockholder from voting upon an alleged excess of stock, held by him before the company had taken any steps to cancel the stock or declare it void. We have not been referred to any case where an interposition of the court by injunction has been exercised for such a purpose, and after some research, we have been able to find none. But from the allegations of this complaint it is not easy to perceive how it would produce irreparable and permanent injury to the company or the plaintiffs, even if Jones should vote upon this alleged excess of stock. The complaint fails to show that imminent danger to the property of the plaintiffs is threatened by the contemplated acts; nor does it present any other sufficient ground or reason for arresting and restraining him from voting upon this stock.

The order dissolving the injunction is affirmed.